# THE STATE v. TOM HORTON, Appellant.

**In Banc, December 30, 1925.**

1. **SEARCH WARRANT: Suppression: Possession of Whiskey: In View and Presence of Officer.** Where the sheriff, hearing the sound of jugs being broken, stepping around the corner of defendant's dwelling house, saw through the door of his detached smokehouse his wife inside breaking jugs containing whiskey, the offense of possessing whiskey was committed in the presence and view of the officer, who therefore had a right to arrest defendant, and therefore there is no ground for suppressing the evidence of the jugs of whiskey then obtained from the smokehouse, even though the search warrant with which he was supplied was illegal.

2. ———: **Illegal Search: Cellar of Dwelling House: Possession of Still.** An officer has no right to enter and search the cellar of defendant's dwelling house without a valid search warrant, and a still there discovered by such illegal search, and not in his view before entering, is not competent evidence in the prosecution of defendant for the offense of unlawfully having in his possession a still for use in the manufacture of intoxicating liquor.

3. ———: **Instructions: Illegal Search: Offense in View and Presence of Officer.** Where one count of the indictment charged defendant with unlawfully having whiskey in his possession, and the second charged him with possession of a still for use in the manufacture of intoxicating liquor, and the evidence shows that the first offense was committed in the officer's presence and view, and that the second was not, but that the still was discovered by an illegal search, instructions predicated upon the assumption that the evidence of the violation of the law was obtained by an unlawful search are properly refused in so far as they relate to the first count.

4. ———: ———: **Possession of Whiskey: Less Amount than Charged.** Where one count of the indictment charged that defendant unlawfully had in his possession seven gallons of whiskey, and a second that he had in his possession a still for use in the manufacture of intoxicating whiskey, an instruction telling the jury that if they did not find that he possessed seven gallons of intoxicating liquor they should acquit him, was properly refused, because (a) it did not indicate to which count it applied and (b) it required the

State v. Horton.

jury to find that he possessed seven gallons, whereas he was guilty if he possessed a less number of gallons.

5. **JUDGMENT: Affirmed in Part: Reversed in Part.** Where defendant was indicted in two counts, in one with the unlawful possession of whiskey and in the other with the possession of a still for use in the manufacture of intoxicating liquor, and was properly convicted under the first count, but improperly under the second, for the reason that there was no evidence of his guilt thereunder except what was obtained by an illegal search, and there is nothing in the record to indicate that other lawful evidence can be produced to sustain the second charge, the judgment will be affirmed as to the first count and reversed as to the second.

Criminal Law, 16 C. J., Section 1110, p. 570, n. 90; p. 571, n. 93; 17 C. J., Section 3757, p. 370, n. 36. Intoxicating Liquors, 33 C. J., Section 547, p. 791, n. 48, 49.

Appeal from Chariton Circuit Court.—*Hon. J. E. Montgomery,* Judge.

AFFIRMED (*in part*) and REVERSED (*in part*).

*F. C. Sasse* and *Lamb & Lamb* for appellant.

(1)  The evidence of the search of appellant's premises, the seizure of the liquor and still thereunder and all information and knowledge gained thereby should have been suppressed and excluded from the trial, because of lack of a search warrant in hands of the sheriff. State v. Owens, 259 S. W. 100; State v. Lock, 259 S. W. 116; State v. Tunnell, 259 S. W. 128; State v. McAnnally, 259 S. W. 1042; Commonwealth v. Dincler, 255 S. W. 1042; State v. Jokosh, 193 N. W. 976; People v. Marxhausen, 3 A. L. R. 1505; United States v. Kraus, 270 Fed. 578. (2)  The court erred in overruling appellant's demurrer to the evidence under the second count of indictment. (3)  The failure of the court to give Instruction 3 asked by appellant was prejudicial error.

*Jesse W. Barrett,* Attorney-General, and *William L. Vandeventer,* Special Assistant Attorney-General, for respondent.

(1)   The Fourth Amendment of the U. S. Constitution relating to unreasonable search and seizure refers only to Federal officials and agents, and has no reference to State officers.   State v. Owens, 259 S. W. 100; Weeks v. United States, 232 U. S. 398; United States v. Folloco, 277 Fed. 75; Burdeau v. McDowell, 256 U. S. 475; McGrew v. United States, 261 Fed. 809.   (2)   Section 11 of Article 2, Constitution of Missouri, has reference to officers and procedure in the State courts only. Hughes v. State, 238 S. W. 588.   (3)   Said Section 11, is a restriction on the powers of the Government and not a restraint on the unauthorized acts of an individual. State v. Lock, 259 S. W. 116; State v. Pomeroy, 130 Mo. 500; Hampton v. State, 96 So. 165; Hughes v. State, 238 S. W. 588.   (4)   Every citizen is bound to assist a known public officer in making an arrest when called upon to do so.   2 R. C. L. 491; Elrod v. Moss, 278 Fed. 129; Kelley's Crim. Law (3 Ed.) sec. 57, p. 57; 5 C. J. p. 428; Dougherty v. State, 106 Ala. 63; 4 Fed. Stat. Ann. p. 767, note.

WHITE, J.—The defendant was indicted by a grand jury in the Circuit Court of Chariton County, in two counts.   The first count charged him with having unlawfully in his possession on the — day of ———, 1923, seven gallons of intoxicating liquor.   The second count charged him with possession of a still for the use of manufacturing intoxicating liquor.

On a trial the jury found him guilty on both counts and assessed his punishment at $300, and imprisonment in the county jail 180 days, on each count.

Before the trial the defendant filed a motion to suppress the evidence of the sheriff and a Federal prohibition officer, on the ground that the evidence of such witnesses was obtained in a search of his premises in violation of the Fourth and Fifth Amendments to the Federal Constitution, and in violation of Section 11, Article 2, of the Constitution of Missouri, and in violation of Sec-

tion 23, Article 2, of the Constitution of Missouri.  This motion was overruled.

The sheriff, over the objection of the defendant, was permitted to testify that he, with the Federal officer went to the home of the defendant with a search warrant and there discovered whiskey which caused the conviction of the defendant on the first count, and a still which caused his conviction on the second count.

A stipulation filed, signed by attorneys for the plaintiff and the defendant, was to the effect that A. S. Wilks, Sheriff of Chariton County, accompanied by Federal prohibition agents, went to the premises of the defendant on a certain day, and that neither the prohibition agents nor the defendant had a valid search warrant authorizing them to search said premises for intoxicating liquor or a still.  An invalid search warrant, however, was in the possession of the prohibition officer and was read or partly read to the defendant.  The only witness for the State was the sheriff who testified to the discovery of the whiskey and still on the defendant's premises.  The principal question in the case is whether the evidence of the sheriff was admissible in view of the timely motion to suppress.  The sheriff testified that he and a Federal agent went to the home of the defendant, and then his testimony proceeds as follows:

"Q.  Well, now, right there let me ask you, did Mr. Wilcox purport to read to Mr. Horton what purported to be a search warrant?  A.  He started in to read it, and just the moment he commenced reading this the lady ran back through the house to what is called the smokehouse, or outhouse, out about fifteen or twenty feet from the back kitchen door, and while he was reading we heard this racket, the lady breaking the jugs, and that attracted the attention of everybody, and that stopped the reading and all rushed to this place.  .   .   .

"Q.  I say was the dwelling house between you and the smokehouse?  A.  Partly; we only had to step out just a few feet until we would be in the direction of the smokehouse where we could see.

"Q.  Where did you first see Mrs. Horton?  A.  In the outbuilding, smokehouse.

"Q.  Did you see her at the front door?  A. Yes sir, at the first.

"Q.  And she left the front door?  A.  Yes, sir.

"Q.  And the next place you saw her was in the smokehouse?  A.  Yes, sir.

"Q.  Now why did you say you happened to go 'round to the smokehouse?  A.  We heard the crash of the breaking those jugs.

"Q.  And you went 'round to the smokehouse?  A. Yes, sir.

"Q.  And what did you find?  A.  Well, we found Mrs. Horton breaking up the jugs, destroying the evidence.

"Q.  What did you get back there, anything?  A. Well, Mr. Wilcox got — yes, we got, I think, three jugs that she didn't break, the others were broken and he got a soda bottle, as well as I remember, of evidence, said that would be sufficient, and destroyed the other in their presence.

"2.  What was it?  A.  It was whiskey."

The sheriff then testified that after the discovery of the whiskey in the smokehouse the Federal officer proceeded into the cellar under the house and discovered the still.  The still was not observable from the outside and was only discovered by a search.  This evidence of the sheriff indicates that the action of Mrs. Horton in breaking the jugs in the smokehouse was seen from the outside; that is, the sheriff did not have to go into the smokehouse, but saw through the open door.

In his testimony on the motion to suppress, the sheriff said:

"Q.  I say, was the dwelling house between you and the smokehouse?  A.  Partly, we only had to step out just a few feet until we could be in the direction of the smokehouse where we could see."

A deposition of the sheriff also was introduced, in which he testified in this way:

"A.  The back door of the house was here (indicating) and right about here (indicating) was the smokehouse.  We could see in the smokehouse before we could see the back of the main house.

"Q.  The smokehouse was west of the residence? A.  Yes, sir; and the door was in the east of the smokehouse.  We ran right up to the door—right on her as she was pounding the jugs.

"Q.  In the smokehouse?  A.  Yes, sir, in the smokehouse; they were in sacks."

I.  The sheriff was lawfully on the premises; it was not intimated that he had no right there.  He didn't have to go into the smokehouse, but to step a little to one side so that he could see back of the house and into the smokehouse.  "All rushed" around there to see what was happening.  There is nothing in the evidence to indicate that the sheriff entered the smokehouse, or made any search in order to find the whiskey, but through the door he saw Mrs. Horton spilling the whiskey, and he knew what she was doing.  The offense, therefore, of possessing whiskey was committed in the presence and view of the officer, and he had a right to arrest her husband.  [See State v. Turner, 259 S. W. 427, 1. c. 428, and Federal cases there cited.]  He had a right to testify to the discovery of the whiskey, and the motion to suppress was properly overruled so far as it relates to the first count of the indictment—the possession of intoxicating liquor.

*Crime Committed in Officer's Presence and View.*

II.  After the discovery of the whiskey by the sheriff in the smokehouse, the Federal agent then made a search in the cellar under the house and discovered the still.  It appears this was not open to view.  It was discovered only by entering the premises where the officer had no right to go and had no right to make a search, so that the evidence in respect to the second count was incompetent, and the motion to suppress that evidence should have been sustained.

*Illegal Search.*

III.   It is claimed by appellant that the court erred in refusing certain instructions asked by him.   Two of these instructions are predicated upon the assumption that the evidence of the violation of law was obtained by an unlawful search, and for that reason the jury should find the defendant not guilty. These were properly refused so far as the first count was concerned.

*Instruction.*

IV.   Another refused instruction, numbered 2, is to the effect that if the jury did not find that the defendant on the—day of October, 1923, within one year prior to the 23rd day of November, 1923, possessed seven gallons of intoxicating liquor, to-wit, whiskey, then they should find the defendant not guilty.   It does not indicate to which count it applied.   The jury were directed to find the defendant not guilty if he didn't possess seven gallons of whiskey; if he possessed six and one-half gallons, or any number less than seven gallons, he would not be guilty of violation of the law.   The instruction, therefore, was properly refused.

It appears there was no evidence of the defendant's guilt under the second count, except that unlawfully discovered by the prohibition officer.   There is nothing in the record to indicate that other evidence can be produced in support of the second count.   Therefore the judgment is affirmed as to the first count, and reversed as to the second count.

PER CURIAM:—The foregoing opinion by WHITE, J., in Division Two is adopted as the opinion of Court in Banc.   *Walker, White, Atwood* and *Graves, JJ.,* concur; *Blair, C. J.,* and *Ragland J.,* concur in Paragraph II and dissent to Paragraph I and the result; *Otto, J.,* not sitting.